JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 26-04528 JGB (AJR)** | Date | August 14, 2026 |
| Title | *Antony Stevens Esteban-Espinoza v. Warden/Facility Administrator, Adelanto Ice Processing Center, et al.* | | |

Present: The Honorable      JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None | None |

**Proceedings:**     **Order: (1) GRANTING Petitioner's Ex-Parte Application for Temporary Restraining Order (Dkt. No. 3) (IN CHAMBERS)**

Before the Court is petitioner Antony Stevens Esteban-Espinoza's ex-parte application for a temporary restraining order. ("Application," Dkt. No. 3.)  The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed, the Court **GRANTS** the Application.

## I.   BACKGROUND

On August 11, 2026, petitioner Antony Stevens Esteban-Espinoza ("Petitioner") filed a verified petition for writ of habeas corpus. ("Petition," Dkt. No. 1.)  Petitioner raises various grounds for relief, including unlawful detainment in violation of the Fifth Amendment. (See Petition.)

That same day, Petitioner filed the instant Application. (App.)  In support of the Petition, Petitioner filed several exhibits relevant to the Application. (Dkt. No. 1).

The Court ordered the Government to respond by August 13, 2026. (Dkt. No. 7.)  On August 13, 2026, the Government responded, stating that they are not "presenting an opposition argument at this time as to the Petition or TRO." (Dkt. No. 9.)

## II.  FACTS

Petitioner is a citizen of Nicaraguan.  (Petition ¶ 13.)  He entered the United States without inspection on November 8, 2022, and was briefly detained but released in November 2022 on parole subject to routine check-ins with Immigration and Customs Enforcement ("ICE").  (Id. ¶ 14.)  Petitioner filed an application for asylum on August 1, 2024, which remains pending.  (Id. ¶ 17.)  He has a valid work authorization card and has no criminal history.  (Id. ¶¶ 5, 23.)  Since his release in November 2022, Petitioner has complied with all supervision conditions.  (Id. ¶ 3.)  For more than forty-three months, DHS repeatedly determined that physical detention of Petitioner was unnecessary.  (Id. ¶¶ 3, 6.)

ICE detained Petitioner during a scheduled immigration check-in on July 27, 2026, in Los Angeles, California.  (Id. ¶ 18.)  ICE alleged no violations, no changed circumstances, and no individualized basis for custody.  (Id.)  Petitioner was given no pre-deprivation hearing and no opportunity to contest the legal basis for his re-detention.  (Id. ¶¶ 6, 18.)

## III. LEGAL STANDARD

A temporary restraining order may be issued upon a showing that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 61(b)(1)(A).  The purpose of a TRO is to preserve the status quo and prevent irreparable harm until a hearing may be held on the propriety of a preliminary injunction.  See Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006).  The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction.  Lockhead Missile & Space Co. v. Hughes Aircraft Co., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right."  Munaf v. Geren, 553 U.S. 674, 690 (2008) (citations omitted).  An injunction is binding only on parties to the action, their officers, agents, servants, employees, attorneys, and those "in active concert or participation" with them.  Fed. R. Civ. P. 65(d).

Courts in the Ninth Circuit may consider the Winter factors on a sliding scale and grant an injunction where the plaintiff raises "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff" if "the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (noting that the latter two elements are "the other two elements of the Winter test").

**CIVIL MINUTES—GENERAL**  Initials of Deputy Clerk MG

### IV.   DISCUSSION

To secure a TRO and a preliminary injunction, Petitioner must show that he is likely to succeed on the merits, likely to suffer irreparable harm, and that the balance of equities and the public interest tips in their favor.  <u>Winter</u>, 555 U.S. at 20.

### A.      Likelihood of Success on the Merits

"Likelihood of success on the merits is a threshold inquiry and is the most important factor."  <u>Env't Prot. Info. Ctr. v. Carlson</u>, 968 F.3d 985, 989 (9th Cir. 2020).  Petitioner argues that his detention violates his Fifth Amendment substantive and procedural due process rights.  (App. at 3–6.)  "Freedom from imprisonment . . . lies at the heart of the liberty" that the Fifth Amendment's Due Process Clause "protects."  <u>Zadvydas v. Davis</u>, 533 U.S. 678, 690 (2001).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  <u>Id.</u> at 693.  As a result, the government can only detain individuals outside of the criminal context in "certain special and 'narrow' nonpunitive 'circumstances.'"  <u>Id.</u> at 690 (citing <u>Foucha v. Louisiana</u>, 504 U.S. 71, 80 (1992)).

The Supreme Court has recognized that an individual on parole has a liberty interest under the Fourteenth Amendment's Due Process Clause requiring "some informal procedural guarantees."  <u>Morrissey v. Brewer</u>, 408 U.S. 471, 482-83 (1972); <u>see also</u> <u>Gagnon v. Scarpelli</u>, 411 U.S. 778, 782 (1973) (extending <u>Morrissey</u> to probation revocation); <u>Young v. Harper</u>, 520 U.S. 143, 145 (1997) (extending <u>Morrissey</u> to Oklahoma's preparole program because it is also "a kind of parole").  This liberty interest exists even though a revocation of parole arises outside of the protections of criminal proceedings.  <u>Morrissey</u>, 408 U.S. at 480.  "[T]he loss of liberty entailed is a serious deprivation requiring that the parolee be accorded due process."  <u>Gagnon</u>, 411 U.S. at 781.  Further emphasizing that this liberty interest does not arise exclusively in the criminal context, the Supreme Court compared the right guaranteed to parolees to a "preliminary hearing" to that guaranteed to welfare recipients prior to the termination of their benefits.  <u>Morrissey</u>, 408 U.S. at 485 (citing <u>Goldberg v. Kelly</u>, 397 U.S. 254, 267-271 (1970)).  Although the Due Process Clauses of the Fifth and Fourteenth Amendments cannot always be read uniformly, <u>see</u> <u>Fuld v. Palestine Liberation Org.</u>, 606 U.S. 1, 13 (2025), the Court is convinced that the liberty interest protecting parolees from revocation without a hearing applies with equal force to noncitizens on parole.  <u>See</u> <u>J.O.L.R., Petitioner, v. Minga Wofford, Mesa Verde ICE Processing Ctr. Facility Administrator</u>, No. 1:25-CV-01241-KES-SKO (HC), 2025 WL 2908740, at *5 (E.D. Cal. Oct. 14, 2025) ("The Court finds that petitioner has a protected liberty interest in his release."); <u>Rodriguez Diaz v. Garland</u>, 53 F.4th 1189, 1205 (9th Cir. 2022) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings.").

Thus, the Court finds that under the Fifth Amendment's Due Process Clause, Petitioner has a liberty interest in due process protections prior to re-detention following a grant of parole.

---

The Court now turns to the question of what procedures are appropriate to protect Petitioner's liberty interest.  Under Mathews v. Eldridge, the Court considers three factors:[1] "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. 319, 335 (1976).

Under the first factor, courts have regularly described a petitioner's interest in remaining out of custody as "substantial."  Diaz v. Kaiser, No. 3:25-CV-05071, 2025 WL 1676854 (N.D. Cal. June 14, 2025).  The weight of the factor increases as a party remains on bond for an extended period.  Morrissey, 408 U.S. at 482.  Here, Petitioner received his parole in 2022. (Petition ¶ 14.)  Thus, DHS released Petitioner on ROR for approximately 43 months.  (Id.) Petitioner's interest is significant.

As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest is high, with no process offered to Petitioner during his re-detention, including not providing any written notice explaining the basis for the revocation of his parole, much less any individualized assessment regarding whether is a flight risk or danger to the community in front through a neutral adjudication process.  (Id. ¶¶ 6, 18.)  The risk of erroneous deprivation is heightened in the context of civil immigration detention, which must be "nonpunitive in purpose."  Zadyvdas, 533 U.S. at 690.

As to the third factor, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017).  The Government's previous decision to release Petitioner on parole demonstrates that the Government found that Petitioner was not a danger to the community and that his presence in future immigration proceedings could be "ensured by . . . alternative conditions."  Id.

Accordingly, the Court concludes that Petitioner has demonstrated a likelihood of success on the merits.

**B.      Irreparable harm**

Petitioner is suffering irreparable harm because he is likely being detained in violation of his constitutional rights.  "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) (quoting Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)).

---

[1] The Court follows the Ninth Circuit, which regularly employs Mathews v. Eldridge in the context of due process challenges in the immigration context.  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206–07 (9th Cir. 2022).

Furthermore, as the Ninth Circuit has explained, "immigration detention" results in "subpar medical and psychiatric care . . . , [] economic burdens . . . on detainees and their families . . . , and [] collateral harms to children of detainees." Hernandez, 872 F.3d 976, 995 (9th Cir. 2017).  Therefore, Petitioner faces irreparable harm.

**C.      Balance of equities and public interest**

Where the government is the opposing party, the balancing of the equities and the public interest merge.  See Nken v. Holder, 556 U.S. 418, 435 (2009).  Thus, the Court asks whether any significant "public consequences" would result from issuing the preliminary injunction. Winter, 555 U.S. at 24.

As other courts have recognized, "the public has a strong interest in upholding procedural protections against unlawful detention." Vargas v. Jennings, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).  And the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." Zepeda v. U.S. Immigr. & Nat. Serv., 753 F.2d 719, 727 (9th Cir. 1983).  Likewise, in the absence of an injunction, Petitioner is and will continue to experience prolonged detention and the resulting emotional harm.  Therefore, the Court finds that the only reasonable relief is Petitioner's release.

Due to the minimal harm suffered by the Government, the Court will not require security.

**V.      CONCLUSION**

For the reasons described above, the Court **GRANTS** Petitioner's Application. Accordingly, Respondents are **ORDERED** to immediately release Petitioner Antony Stevens Esteban-Espinoza (A# 246 161 332) from custody, subject only to narrowly tailored conditions of release no more restrictive than necessary to ensure his appearance as required and to protect the community, if any.  Additionally, Respondents shall file a status report no later than five (5) days from the date of this Order confirming that Petitioner has been released from Respondents' custody consistent with this Order.

Lastly, given the sensitive nature of the exhibits filed in support of the Petition (Dkt. No. 1.), the Court **DIRECTS** the Clerk of Court to **SEAL** the entry.

**IT IS SO ORDERED.**